## BANK OF UKIAH v. GIBSON et al.[*]

### No. 16,662; April 3, 1895.

39 Pac. 1069.

**Chattel Mortgage on Livestock—Record as Notice.**—Civil Code, section 2955, provides for chattel mortgages on certain property; and section 2957 provides that the record of such mortgages shall be constructive notice, and that mortgages not recorded shall be void as against subsequent creditors and purchasers. Held, that the act of March 9, 1893, amending section 2955, so as to authorize mortgages on sheep and neat cattle, does not entitle a mortgage on such stock, executed before the passage of such act, to be recorded, so as to render its record, made after the passage of the act, constructive notice.

---

[*] For subsequent opinion in bank, see 109 Cal. 197, 41 Pac. 1008.

Chattel Mortgage on Livestock—Validity.—A Chattel Mortgage on property other than that authorized to be mortgaged by the Civil Code, section 2955, is as a common-law mortgage, valid against all persons except subsequent creditors of the mortgagor and bona fide purchasers.

APPEAL from Superior Court, Mendocino County; R. W. Crump, Judge.

Action by the Bank of Ukiah against E. S. Gibson and others to foreclose a mortgage. From a judgment denying plaintiff a foreclosure as to part of the property, it appeals. Affirmed.

J. A. Cooper for appellant; J. M. Mannon, T. L. Carothers, J. W. Oates, J. Q. White and J. H. Seawell for respondents.

SEARLS, C.—This is an action by the Bank of Ukiah (a corporation) to foreclose two mortgages executed by E. S. Gibson, to secure the payment of a promissory note made by him to said bank. One of the mortgages was upon certain real property, and the other a chattel mortgage upon three thousand five hundred head of sheep, more or less, and one hundred head of neat cattle, more or less, upon a certain ranch therein described. The court entered a decree in favor of plaintiff for the foreclosure of the mortgages and sale of the real property and the neat cattle, but denied a foreclosure as to the sheep. Plaintiff appeals from so much of the decree as denied to it a foreclosure and sale of the sheep, etc., described in the complaint and chattel mortgage. The cause comes up on the judgment-roll, without a statement or bill of exceptions.

Under these circumstances, the question for determination is, Do the findings support the decree? All reference to the mortgage upon the real estate may be omitted, as no question is made in regard to it. As to the chattel mortgage, the following facts, drawn from the pleadings as admitted and from the findings, will serve to an understanding of the legal question involved. On the thirtieth day of June, 1892, at Ukiah city, Mendocino county, the defendant E. S. Gibson made to the Bank of Ukiah, the plaintiff herein, his promissory note for $29,917.88, payable one year after date, with interest at ten per cent per annum, etc. To secure the pay-

ment of this promissory note, defendant executed to plaintiff a chattel mortgage upon certain personal property, then being upon that certain ranch of defendant Gibson, in the county of Mendocino, known as "Island Mountain Ranch," said personal property so mortgaged consisting of three thousand five hundred head of sheep, more or less, and one hundred head of neat cattle, more or less, being all the sheep and cattle owned by defendant Gibson on said ranch. The mortgage was made, executed, acknowledged, and verified in all respects as provided and required by section 2957 of the Civil Code, except that it was not recorded until May 9, 1893, when it was duly recorded in the office of the county recorder in and for the county of Mendocino, in which county the parties resided and the property was situate. The mortgagor, E. S. Gibson, retained possession of the mortgaged property. It may be remarked here, by way of parenthesis, as it is not within the findings, that, at the date of the execution of the mortgage, neat cattle and sheep were not among the articles of personal property upon which personal mortgages could be made under section 2955 of the Civil Code, but that on the ninth day of March, 1893, said section 2955 was amended so as to include "neat cattle, horses, mules, swine, and sheep, and the increase thereof." Subsequent thereto, and on the ninth day of May, 1893, the mortgage was recorded as before stated. After the recording of said mortgage, viz., after May 9, 1893, the defendant T. J. Welden, with full knowledge of the existence and recording of said mortgage, and without the knowledge or consent of the plaintiff, purchased from defendant E. S. Gibson, at the ranch of the latter in Mendocino county, the said neat cattle and sheep so mortgaged, and drove the sheep hence to Drury's corral, in the county of Humboldt, where on May 19, 1893, he sold and delivered them to the defendant Mrs. M. C. Drew, who purchased said sheep in good faith, for a valuable consideration, and without notice in fact of the mortgage of the plaintiff, and without knowledge that Gibson ever owned the sheep. The contract for the purchase of the sheep between Mrs. Drew and Welden was made at Ukiah, in Mendocino county, before the sheep were driven from said county, but she was not aware of that fact, and went with Welden to said Drury's corral, Humboldt county, the day the sheep were driven thither from Humboldt county, viz., May 19, 1893. Welden, when he purchased

the mortgaged property from defendant E. S. Gibson, gave to the latter an agreement to pay $2.50 per head for the old sheep, and $20 per head for the cattle. Lambs and calves were to be thrown in. He has paid nothing on account thereof, and the court finds that said Welden "is not the owner of the neat cattle described in the complaint, and his title and claim thereto is not paramount to plaintiff's mortgage, and he is not the purchaser of said property in good faith or for value without notice." As before stated, the sheep were removed from Mendocino to Humboldt county May 19, 1893, and within ten days thereafter, viz., May 29, 1893, plaintiff's chattel mortgage was duly recorded in said county of Humboldt. The chattel mortgage authorized the mortgagee, upon default in the payment of the promissory note, to take possession of all the mortgaged property, and dispose of the same according to law.

In the early history of California as a state, section 17 of the statute of frauds provided that "no mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee." In 1857 an act was passed under which certain personal property might be mortgaged by complying with its provisions, one of which involved recording, which should be valid without delivery of the property to the mortgagee: Stats. 1857, p. 347. This act provided also that such mortgages should not be valid (except between the parties) unless the statute was complied with. This act was again amended in 1861: Stats. 1861, p. 197. This last act also left mortgages of personal property absolutely void, except between the parties, save upon a compliance with its provisions, or where accompanied by a delivery of the property to the mortgagee and retention of possession by him. Under these statutes, the decisions of this court were to the effect: (1) The provisions of the statute only applied to the specific articles of personal property therein enumerated; (2) that where the provisions of the statute were not complied with, and as to mortgages of personal property not therein provided for, the mortgage was absolutely void (except between the parties thereto), unless accompanied by a delivery of the property to the mortgagee: Gassner v. Patterson, 23 Cal. 299; Meyer v. Gorham, 5 Cal. 323; Stringer v. Davis, 30 Cal. 318; Glenn v. Arnold,

56 Cal. 631. Under our Civil Code (section 2957), "a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless (1) it is accompanied by the affidavit of all the parties thereto that it is made in good faith and without any design to hinder, delay, or defraud creditors; (2) it is acknowledged or proved, certified and recorded in like manner as grants of real property." The distinction between the former statute and the section of the code quoted supra is this: Under the former law, a mortgage which failed to comply with its provisions was void as against purchasers. Now it is only void as against subsequent purchasers in good faith and for value; that is to say, against those who purchase without notice and for a valuable consideration. A mortgage of personal property not specified in section 2955 of the Civil Code may be made, and, if possession of the mortgaged property is delivered to the mortgagee, it is good against all the world. If no such possession is delivered to the mortgagee, it is still valid between the parties and against purchasers with notice: Tregear v. Water Co., 76 Cal. 537, 9 Am. St. Rep. 245, 18 Pac. 658; Works v. Meritt (decided January 5, 1895), 105 Cal. 467, 38 Pac. 1109. Recording a chattel mortgage upon articles provided to be mortgaged by section 2955 of the Civil Code, takes the place of and serves in lieu of the delivery of possession essential to the validity of the mortgage in other cases: Berson v. Nunan, 63 Cal. 550; Cardenas v. Miller (Cal.; decided March 13, 1895), 39 Pac. 783.

The case, then, stands thus: Plaintiff had a chattel mortgage, which at the date of its execution was valid between it and the mortgagor, and as against purchasers with notice, or without value, but which was void as against creditors or purchasers in good faith and for value, for two reasons: (1) Because the property mortgaged was not such as is specified in section 2955 of the Civil Code, and the recordation thereof would not therefore have imported constructive notice; and (2) because possession of the mortgaged property was not delivered to the mortgagee. Subsequently, and before any purchaser intervened, the statute (section 2955, Id.) was amended so as to include among the articles which might be mortgaged under it neat cattle and sheep. Thereafter plaintiff recorded its mortgage, and, subsequently thereto, defend-

ant Drew purchased the sheep without other notice than that imparted by the record. Did she take subject to the chattel mortgage of plaintiff, the appellant here? We are of opinion the question should be answered in the negative. Section 3 of the Civil Code provides that "no part of it is retroactive unless expressly so declared." We find no declaration showing a legislative intent to apply the amendment of 1893 to section 2955 of the Civil Code to past transactions, and hence must hold that it does not so apply. The case then stands thus: Plaintiff had an attempted chattel mortgage upon certain sheep, which, as against creditors and subsequent purchasers in good faith and for value, was absolutely void as a statutory mortgage, for the reason that it was given upon property not provided for in the statute, and therefore incapable of being mortgaged: Jones, Chat. Mortg., sec. 122; Stringer v. Davis, 30 Cal. 318; Gassner v. Patterson, 23 Cal. 299; Glenn v. Arnold, 56 Cal. 631; Dufficy v. Shields, 63 Cal. 333; In re Fischer, 94 Cal. 523, 29 Pac. 961. Such a mortgage, not being accompanied by possession in the mortgagee, lacked, as against innocent purchasers and creditors, the vitalizing force of law requisite to give to it effect, and fell stillborn. The amendment to section 2955, adopted March 9, 1893, made it possible thereafter to give chattel mortgages upon neat cattle and sheep, but did not and could not, unless it had a retroactive effect, breathe life into a dead mortgage of the past. To make a chattel mortgage of an instrument, which was not and could not possibly be such at the date of its execution, by force of a law subsequently passed, is to give a retroactive effect to such law. In Pennsylvania, a statute passed in 1833 required that a testator's mark to his name, at the foot of a testamentary paper, should be accompanied by his express direction to the person who wrote his name to write the same; and the court had decided that, without proof that the name was written by the express direction of the testator, the will was invalid. In 1848 the legislature passed a statute declaring that "every last will and testament heretofore made, or hereafter to be made, . . . . to which the testator's name is subscribed by his direction, or to which the testator has made his mark or cross, shall be deemed and taken to be valid": Laws 1848, p. 16. In Greenough v. Greenough, 11 Pa. 489, 51 Am. Dec. 567, the supreme court of that state held the amendatory

statute invalid, so far as applicable to last wills executed before its passage. This ruling was upon constitutional grounds, and in the absence, so far as appears, of any statute like the third section of our code, confining statutes to prospective action.

It follows that, (1) independent of the chattel mortgage act, the mortgage was valid as against Gibson, the mortgagor, and Welden, who purchased with actual notice of its existence; (2) that as against the respondent Mrs. M. C. Drew, who was an innocent purchaser of the sheep for value, without notice, the mortgage was void, both as a common-law and a statutory mortgage of personal property. The judgment appealed from should be affirmed.

We concur: Belcher, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.