JAMES C. ARMSTRONG, Receiver of the Citizens' Bank of Ogden, Utah, Appellant, v. THE CACHE VALLEY LAND AND CANAL COMPANY et al., Respondents.

Promissory Note—Estoppel—Guaranty—Consideration—Voidable Contract—Election—Official Signatures—Evidence.

1. R. was president of the defendant, and vice president and manager of the bank for which plaintiff was receiver, and W. was at the same time secretary for both companies, when the note sued upon was given by the defendant company, and signed: "Cache Valley Canal Co., Theo. Robison, Pres. R. H. Whipple, Sec." It appears that the note in question was given for another note, and interest on the latter, which was signed and guarantied by R. and W., and that, when the exchange was made, collateral security in bonds was given in the place of the guaranty, but that, four or five days later, defendants R. and W., without any consideration, guarantied the note. Held, that R., as manager of the bank, might substitute the note sued on, and the collateral security thereon, for the former note and guaranty, without the consent of the directors, if he had habitually exercised such authority to the knowledge of the board, and without objection, as the board would be estopped from denying the authority of the manager; and, since the transaction was conducted by officers of the bank, the presumption is that they knew the extent

of their authority. The second guaranty, being signed five days after the new note and collaterals were given, on the ground merely that the bank might wish to negotiate the second note, is not binding, since there was no consideration to support it.

2. The agreement of R. and W. to substitute the new note and collaterals for the old note and guaranty, by which they would discharge themselves, being officers of both corporations, was voidable only; and, to render the agreement void by returning the stock given as collateral, it must appear that all of the stock of any value was returned, or tender of all made.

3. Plaintiff cannot retain the bonds and the new note, and rely upon it in the action. A part of the transaction cannot be ratified and the rest repudiated.

4. Where the signers of a promissory note place the words, "President" and "Secretary" after their names, having first signed the corporate name, such words will not be considered mere surplusage, and the note will not be regarded as a joint note if the circumstances unmistakably indicate an intention not to sign the note as joint makers.

5. It is competent for plaintiff to offer in evidence a paper in which he has acknowledged the receipt of bonds and stocks constituting collateral security on the note sued on, when the purpose of such evidence is to contradict the testimony that the bonds were given in part to secure a second note, and in lieu of a guaranty signed by defendants R. and W.

(No. 753. Decided April 1, 1897.)

Appeal from the Second district court, Weber county. Hon. C. H. Hart, *Judge.*

Action by James C. Armstrong, receiver of the Citizens' Bank of Ogden, against the Cache Valley Land and Canal Company and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Richards & Macmillan,* and *A. E. Pratt,* for appellant.

Robison, as an officer of the Citizens' Bank, had no authority by virtue of his office to release himself and co-guarantors from their obligations upon the prior guaranty, nor to compromise with himself and co-guarantors their indebtedness upon the same. 4 Thompson on Corp. secs. 4751 and 4752.

Nor to make any representation that would have that effect. *Thompson* v. *McKee*, (Dak.) 37 N. W. 367; *Bank of U. S.* v. *Dunn*, 6 Peters 51; *Cochecho Nat. Bank* v. *Haskel*, 12 Am. Rep. 67; *Davis* v. *Randall*, 15 Am. Rep. 150.

And being an officer of the Cache Valley Land and Canal Co., and also one of the signers of the guaranty, he was not in a position to consent for the Citizens' Bank to any arrangement which would release his personal liability or that of his co-guarantors. *Gallery* v. *National Exchange Bank*, 41 Mich. 169; *Stevenson* v. *Bay City*, 26 Mich. 46; *Mathias* v. *Kirsch*, 33 Atl. 19; *Dykman* v. *Northridge*, 36 N. Y. S. 962.

The doctrine of estoppel cannot be invoked. *People* v. *Bank of North America*, 75 N. Y. 560.

The act of Defendant Robison was not a substitution of one security for another. *Wood Mowing & Reaping Co.* v. *Farnham*, 33 Pac. 867; *Nading* v. *McGregor*, 23 N. E. Rep. 283.

*Whipple & Johnson*, for respondents.

Notes of the same wording and identically the same in form, signing and all, have almost universally been held to be the contract of the corporation *only*, and not joint notes. *Farmers' Sav. Bank* v. *Colby*, 64 Cal. 352; *Latham* v. *Houston Flour Mills*, 3 S. W. Rep. (Tex.) 462; *Liebscher* v. *Cross*, 43 N. W. Rep. (Wis.) 166; Thomp. on Corp., vol. 4, secs. 5134, 5148, 5149 and 5150.

"As between the original parties (and that is this case),

where a note is indorsed after delivery and without consideration, the indorsers are not liable." *Leverone* v. *Hildreth,* 80 Cal. 149; Brown, Stat. of Frauds, sec. 181; *Ware* v. *Adams,* 24 Me. 177; *Colborn* v. *Tolles,* 14 Conn. 341.

"Where the managing officer of a bank has no inherent power, he nevertheless binds the bank in many cases by usage. Morse on Banks and Banking, vol. 1, sec. 144.

"A bank, by suing on a note taken by its cashier under a contract made by him, ratifies the contract *in toto,* though he was unauthorized to make it." *La Grange National Bank* v. *Blum,* 41 Pac. Rep. 659; *Planters' Bank* v. *Sharp,* 43 Am. Dec. 470 p. opin. 471; Thomp. on Corporations, vol. 4, sec. 5297, and note to sec.; *Teague* v. *Maddox,* 150 U. S. p. 126-128; *Eadie Guilford & Co.* v. *Ashbaugh,* 44 Ia. 519; *Thompson* v. *Spray,* 72 Cal. 528 p. opin. 533; *Hooker* v. *Hubbard,* 97 Mass. 175; Bigelow on Estoppel, 5th Ed. p. 681, and note.

ZANE, C. J.:

This action was instituted on a promissory note in the words following: "$10,333.00. Ogden, Utah, Dec. 20, 1893. Six months after date, for value received, we promise to pay to the Citizens' Bank of Ogden, Utah, or order, ten thousand three hundred and thirty-three dollars, at the Citizens' Bank of Ogden, Utah, with interest from date at ten per cent per annum, payable annually until paid, both before and after judgment; and, if suit be instituted for the collection of this note, agree to pay ten per cent attorney's fee. And, if interest is not paid when due, it is to become part of the principal, and bear same rate of interest. Cache Valley Land and Canal Co. Theo. Robinson, Pres. R. H. Whipple, Sec." And the guaranty written thereon as follows: "For value received, I hereby guaranty the payment of the within note at maturity,

waiving demand, notice, and protest of same. Theo. Robison. R. H. Whipple. Corey Brothers & Co." The answer admitted the cause of action as alleged against the Cache Valley Land & Canal Company, but denied the liability of the other defendants, for the reasons, as averred, that the alleged guaranty was merely an accommodation indorsement, and without any consideration whatever. It appears from the evidence that defendant Theodore Robison was the vice president and manager of the bank, and president of the defendant corporation, at the time of the execution of the note and guaranty, and that defendant R. H. Whipple was at the same time secretary of both corporations; that in February, 1893, the defendant company borrowed of the bank $10,000, and executed a promissory note therefor similar to the one declared on, and that the other defendants guarantied its payment; that this note and guaranty were renewed twice thereafter, and that on the 20th day of December of the same year the defendant Robison accepted the note of the defendant company sued on, and $75,000 of its bonds, and $30,000 of its stock, as collateral security, and surrendered the old note. These bonds and stock the defendants Robison and Whipple testified were taken as security in the place of the guaranty on the preceding note. Assuming the transaction to be binding, its effect was to satisfy and cancel the old note, and to substitute the new one in its place, and to discharge the guarantors from further liability as such, and to make the stocks and bonds delivered the sole security for the payment of the debt. The substitution of the new note, with the collaterals for the note surrendered, amounted to a satisfaction of the latter, if the parties so agreed. Daniel, Neg. Inst. (3d Ed.) §§ 1287, 1292; Wait, Act. & Def. p. 421.

It is claimed, however, that Robison, the vice president

and manager of the bank, was not authorized to accept the new note for the old, and substitute the stocks and bonds as security for the guaranty, and discharge the guarantors, without the consent of the directors. Such is the law, unless the manager habitually exercises such authority, to the knowledge of the board, and without objection. If the board allows the manager to hold himself out as possessing such authority, it will be estopped to deny that he had the power, after third persons have, in good faith, acted on such appearances. But this transaction was conducted and consummated by officers of the bank, and we must presume that they knew the extent of their authority.

The plaintiff claims, further, that the defendants Robison and Whipple, being officers of both corporations, could not make a valid agreement to substitute the collateral security for their guaranty, and discharge themselves. Such an agreement was voidable, but not absolutely void. The bank could repudiate such an agreement, or it could affirm and ratify it. On the trial the receiver tendered to the defendants all the stock he received, but how much that was does not appear from the record. In order to avoid the agreement, the plaintiff should have tendered back all that it received upon it that was of any value. The plaintiff retains the bonds and the new note, and has relied upon it in this case. This the bank cannot do, and insist upon disregarding the transaction, for the reason that its manager was not authorized to make it, or because, as manager of the bank, he made the agreement, and was also one of the persons with whom the agreement was made. The bank could not ratify a part of the transaction and repudiate the rest. It should have adopted the whole, or none. *Bank* v. *Sharp,* 43 Am. Dec. 470; *Bank* v. *Blum,* (Or.) 41 Pac. 659; 4 Thomp. Corp. §§ 5286, 5317.

The same witnesses testified further that five days after
the transaction the defendant Robison said to Whipple
that it would look better if the guaranty was on the new
note, as it was on the old one; that the bank might wish
to negotiate it. Under these circumstances, both wit-
nesses stated, they signed the guaranty, and that they did
so without any consideration whatever. Assuming these
statements to be true, the guaranty is one in form simply,
and has no consideration to support it. If the bank, at
the time the alleged guaranty was given, had proposed to
repudiate the transaction by which the note with the
stocks and bonds were accepted for the note and guar-
anty surrendered, and the guarantors to prevent such
repudiation, and the setting aside of the transaction, be-
cause its manager had no right to make it, and such pur-
pose to repudiate and set aside had been abandoned in
consideration of the execution of the guaranty sued on,
a different case would have been presented.

The plaintiff also insists that defendants Robison and
Whipple were joint makers of the note with the Cache
Valley Land & Canal Company; that the term "Presi-
dent," that follows the one name, and the term "Secre-
tary," that follows the other, should be treated as sur-
plusage. It appears from the record that the loan by the
plaintiff was to the corporate defendant, and that defend-
ants Robison and Whipple received no part of it; that,
five days after the execution and delivery of the note
and collaterals, they signed the guaranty on the note.
These facts, as well as the use of the names of their re-
spective offices, unmistakably indicate an intention not
to execute the note as joint makers, and that they signed
their names with their official designations under the
name of the corporation, with an intention simply to
make the note binding upon the latter. *Bank* v. *Colby*, 64

Cal. 352; 4 Thomp. Corp. §§ 5134, 5135, 5138; *Latham* v. *Houston Flour Mills,* (Tex. Sup.) 3 S. W. 462.

On the trial of the case the plaintiff offered in evidence a paper bearing date August 10, 1893, in which the plaintiff acknowledged the receipt of the $75,000 of bonds, which, with the $30,000 stock, constituted the collateral security of the note sued on. To this offer the court sustained defendants' objection, and plaintiff excepted, and assigns the ruling of the court as error. The purpose of the evidence was to contradict the testimony that the bonds were given in part to secure the last note, and in lieu of the guaranty of Robison and Whipple. While the ruling of the court sustaining the objection to this receipt was erroneous, we do not think it would have changed the result had it been admitted, in view of the fact that the plaintiff relies on the note obtained by the transaction, and the same bonds, with the stock, were taken as collateral security for the note in suit. Though the ruling was wrong, we do not regard it as reversible error. We find no reversible error in this record. The judgment is affirmed.

BARTCH, J., and McCARTY, District Judge, concur.